Appeal — Trover for a Horse — issues upon the pleas of not guilty, and statute of limitations.
White's son, who was under age, and lived with his father, set out for Price's settlement, on the frontier of Kentucky; he rode his father's horse by his permission; several persons went in company with him on the journey; late in the evening, on the last of November, or first of December, 1798, they came to the house of the defendant where they lodged.
The defendant had no pasturage, but told the *Page 20 
company, they had best turn their horses into some cane not far from the house. This the plaintiff's son with the rest of the company did; upon looking for the horses in the morning, it appeared that White's horse was missing. The plaintiff's son hired the defendant to search the woods for the horse, and in the mean time stayed at the defendant's house.
The defendant, after searching the woods for several weeks, returned without being able to find the horse. The plaintiff's son remained at the defendant's house until the last of January, or the first of February following. Upon setting out upon his return home, which was at a considerable distance, he requested the defendant would endeavor to get his horse. If he found him he might use him as his own, until he could have an opportunity to send him to his father's; and that he, the son, would pay him for his trouble. After some time the defendant found the horse, poor, and in bad order.
After the defendant got the horse, he died in the fall of 1799. The defendant however, previous to his death, used the horse, though there was no proof that he abused him.
In considering the grounds made by the plaintiff, it will be necessary for the jury to inquire, first, whether the son rode the horse to Kentucky by authority or permission of the father. Should you be of opinion, that it was done by his authority, the next inquiry will be, whether the defendant so injured the horse by gross negligence or abuse, that he died. If such negligence or abuse did actually take place, you will find for the plaintiff.[1] But if the jury should be of opinion that the evidence will not support this part of the plaintiff's case, and they should think that the horse was ridden by permission of the plaintiff, it would seem to be an inference of law, or an incident of such authority or loan, that the son might consent to any thing respecting the horse, which, in common prudence, would be necessary to his existence, or preservation. There are many circumstances in the use of property, of a light import necessarily incident to the possession; but they are such as show, that the preservation, and not the use, is the principal and direct object of the parties; or rather that use will conduce to its preservation. Under the circumstances in which the son and defendant were placed, when the horse was lost, should you be convinced that the use of the horse until he could be sent in *Page 22 
was consistent with ordinary means of preservation, you will consider an implied authority in the son to permit the use of the horse to that extent; and on that ground, find for the defendant.
Upon the plea of the statute of limitations, the Court are clearly of opinion that the period from which the statute begins to run is the first moment of the possession by the defendant, if the use was not lawful; and that the plaintiff is not permitted to assume as the period, any point of time during the continuance of the possession in the defendant.[1] Verdict for the Defendant.
ORIGINAL NOTE. — The following points of practice occurred. Mr. Vincent, a witness in behalf of the plaintiff, stated that in conversation with the defendant, he acknowledged the possession of the horse. In his cross-examination, the witness was asked what further conversation took place at that time, respecting the horse; in answer, he was proceeding to state what the defendant said respecting the death of the horse, when in his possession, and his usage.
This was objected to — but by the Court: All the conversation which passed at the same time, connected in any manner with the possession of the horse, ought to be stated.
The defendant's counsel offered to read a deposition taken in Kentucky. Objected that the deposition was taken without authority. Upon examination of the proceedings, it appeared that orders were made for taking depositions on both sides previous to last March term, which had been continued regularly until that time, when no order was made for taking depositions, nor was there any continuance of the old. The deposition was taken in pursuance of a ded. po.
issued by the clerk since the last term.
[1] L. Ray. 909.
[1] 2 Esp. N. P. 210 Gould's ed.; 2 Hay. 293.